GEORGE MUNRO, Appellant, *v.* ERASTUS F. BEADLE and WILLIAM ADAMS, Respondents.

*Trade-mark of "Sleuth" by a publisher— what a sufficient adoption thereof— what constitutes an infringement thereof.*

In an action, brought to enjoin the use of a trade-mark by the plaintiff, the publisher of a series of works of fiction known as "The Old Sleuth Library," it appeared that the first publication in 1872, and again in 1880, and again in 1885, was called "Old Sleuth, the Detective of the Bay Ridge Mystery, by Old Sleuth." Several other publications followed, in the title of which the words "Old Sleuth" occurred. In the years 1885, 1887 and 1888, the defendants published, as a part of Beadle's Dime Library, stories entitled "Captain Coldgrip, the City Sleuth, or the Coolest Woman in New York," and "California Sleuth, or the Trail of the Gold Grandee;" "The Silent Sleuth, or the Bogus Nephew," and other works in which the word "Sleuth" was used.

Up to the time of the adoption of the name "Sleuth," or "Old Sleuth," by the plaintiff, it had not been applied to a work of fiction or to indicate the name of a publication.

*Held*, that the adoption of this word by the plaintiff satisfied all the requirements of the law governing common-law trade-marks.

That, by its adoption and use, the plaintiff acquired in it a certain property right which was entirely independent of the statute laws pertaining to copyright, and in which he was entitled to be protected.

That the defendants had infringed upon this trade-mark of the plaintiff by the use which they had made of the word "Sleuth" in their publications, in which it was used in such a relation as would be apt to mislead and deceive the class of people for whom such publications were written.

Appeal by the plaintiff, George Munro, from a final judgment, entered, after a trial at a Special Term held in the city of New York, in the office of the clerk of the county of New York on the 11th day of October, 1888, by which judgment the plaintiff's complaint was dismissed, with costs.

The action was brought to enjoin the use of a trade-mark claimed by the plaintiff to be a part of the good will of his business.

The plaintiff is a publisher of a series of works of fiction known as the Old Sleuth Library. The first publication was called Old Sleuth, the Detective, or the Bay Ridge Mystery, by Old Sleuth. This was first published in 1872, and again in 1880, and still again in 1885. Another work is entitled Old Sleuth's Triumph, by Old Sleuth; first half. Another is Old Sleuth's Triumph; second half. Another, which was published was copyrighted in 1875, and repub-

lished in 1885, and is called Old Sleuth in the Harness Again; or Four Noted Detectives Unveiling the Mystery; by Old Sleuth.

The defendants are publishers of Beadle's Dime Library, so-called. In the years 1885, 1887 and 1888 they published, as a part of such library, stories entitled as follows: Captain Coldgrip, the City Sleuth, or the Coolest Woman in New York. The California Sleuth, or the Trail of the Gold Grandee. The Silent Sleuth, or the Bogus Nephew. Old Buckeye, the Sierra Sleuth, or Against Desperate Odds. Kelly, Hickey and Co., the Sleuths of Philadelphia, consisting of four detectives by the names of Kelly, Hickey, Wheeler and Sewer Sam. Another entitled Deep Duke, the Silent Sleuth, or The Man of Two Lives. The Young Sleuths, or Rollicking Mike's Hot Trail. Crowningshield, the Sleuth, or Pitiless as Death, and Broadway Billy's Death Racket, or The Silent Street Sleuth's Wake.

*Roger Foster*, for the appellant

*Rowland Cox*, for the respondents.

MACOMBER, J.:

The Old Sleuth Library, which is a serial, contains stories first published in the Fireside Companion, mainly devoted to the description of the feats of a detective known as Old Sleuth, of all of which one Harlan P. Halsey is the author.

Up to the time of the adoption by the plaintiff of the name Sleuth, or Old Sleuth, as applied to a character in any of the works of fiction, or as indicative of the name of the publication issued by him, that word was not in common use, even if it existed as an established substantive. The word " sleuth " or " sleuth-hound " does not appear in the first edition of Webster's Unabridged Dictionary, or in any edition of Worcester until after 1880, and then only in the supplement thereto. Its derivation is probably Icelandic, or, at least, northern, and comes from the word *slot*, which was used in Scotland and the northern countries to indicate, primarily, a track in the snow, and afterwards a track in the earth as well. It did not find its way into the English dictionaries until very recently, and there is said to be pronounced as though spelled s-l-o-t-h. When detached from the word " hound," to which it is commonly prefixed, it means the track of an animal as the same may be known by the scent.

The adoption of this word by the plaintiff seems to satisfy all of the requirements made by the law governing common-law trade-marks, as determined by the case of *Selchow* v. *Baker* (93 N. Y., 59), which, among the numerous and varied cases upon the subject generally, is perhaps the most instructive for determining the question immediately before us. Even if the word sleuth was not new, that is to say, coined by the plaintiff, it certainly was not in common use at the time of its adoption by him as the name of his publication or library. The plaintiff was the first one to use it as applied to his own publication. Of this there is no dispute. It answers the purpose of distinguishing the plaintiff's works from those of all others. It is not descriptive of the subject-matter of the manufacture or publication. It has no relation to the grade or quality of the novel. It was originally a fanciful and arbitrary word to indicate the publications of the plaintiff alone. By its adoption and use, the plaintiff acquired in it a certain property right which is entirely independent of the statute laws pertaining to copyright, and should be protected.

It is plain that the defendants have infringed the trade-mark of the plaintiff by the dexterous use which they have made of the word Sleuth in the publications, the names of which are above recited. Any imitation of the name of the plaintiff's publication which tends to mislead the reading public would be an infringement, although the imitation was inexact. The circumstance that the defendants do not say that their serial publications are composed of numbers of the Old Sleuth Library, and fail to call it Old Sleuth, or the Sleuth Library, is unimportant, provided they have used the word Sleuth, or Old Sleuth, in such a relation as would be apt to mislead and deceive the class of people for whom such publications were written. That such is the effect of their acts is quite clearly established by the evidence. Happily no point is made by considerate counsel which requires us to look into the matter of these several publications.

The judgment should be reversed and new trial granted, with costs to the appellant to abide the event.

Van Brunt, P. J., concurred; Bartlett, J., concurred in result.

Judgment reversed and new trial granted, with costs to the appellant to abide event.