KEASBEY et al. v. BROOKLYN CHEMICAL WORKS et al

*(Supreme Court, General Term, First Department.* November 13, 1891.)

TRADE-MARKS—PRELIMINARY INJUNCTION—EVIDENCE.

Plaintiffs, manufacturing a compound which they termed "Bromo Caffeine," and claiming proprietary rights in the use of such name, sought to restrain the use by defendants of the same name applied to the same compound manufactured by defendants. Affidavits filed by plaintiffs and defendants left the question in doubt whether plaintiffs were the originators of the compound in question, whether the name in question was not a mere designation of the principal ingredients of such compound, and whether the dissimilarity of the bottles and labels used by defendants in putting up the compound was sufficient to prevent the public from buying their compound for that of plaintiffs. *Held,* that a preliminary injunction was properly denied.

Appeal from special term, New York county.

Action by Henry G. Keasbey and Richard V. Mattison, plaintiffs, against the Brooklyn Chemical Works and others, defendants. From an order dissolving a preliminary injunction plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and INGRAHAM and DANIELS, JJ.

*Coudert Brothers,* (*Edward K. Jones,* of counsel,) for appellants. *Taylor & Parker,* (*Herman Aaron,* of counsel,) for respondents.

DANIELS, J. The plaintiffs since about the year 1881 have been engaged in manufacturing and selling an article to which they have given the name of "Bromo Caffeine." This article is claimed to be a compound made by themselves of a chemical nature, and sold for medical purposes, and in that business a large and profitable trade has been created. The defendants engaged in the same business in or near the year 1890. The Brooklyn Chemical Works manufactured an article which it has variously called "Bromide Caffeine" and "Bromo Caffeine," by which it is claimed on behalf of the plaintiffs that their rights to the use of this term for the identification and sale of their compound has been fraudulently imitated and their profits diminished; and it was to restrain this alleged violation of right that the application for the injunction was made.

It did appear in behalf of the plaintiffs that they had produced this compound, and had placed it upon the market, and secured a large sale for it, under the name of "Bromo Caffeine," prior to the time of the manufacture of the article produced and sold by the defendants. But, in answer to the application, affidavits were produced maintaining the fact to be that this was not an entirely new compound, or one to which the name of "Bromo Caffeine" had been first applied by the plaintiffs; and in the affidavits reference has been made to the use of the words in chemical works, indicating the previous existence of this compound under the same name, before the time when it was manufactured by the plaintiffs. The effect of these affidavits the plaintiffs endeavored to avoid by others made in their favor, maintaining the manner in which their article was compounded to be different from that manufactured by the defendants, and that the words or phrase had not been so used or employed prior to their use of it in their own business. But, without determining the effect of the affidavits, it may very properly be said that they have left this essential part of the plaintiffs' case in a substantial degree of controversy, and one that can hardly be expected to be satisfactorily settled without hearing and weighing the testimony of the witnesses themselves. Besides that, there is reason for believing from the statements contained in the affidavits that this phrase "Bromo Caffeine" is no more nor less than a description of the compound itself resulting from the names of the principal articles used in its production; and, where that appears to be the fact, the phrase is incapable of exclusive appropriation by any party making the compound to which it is appropriately applied, as a mere matter of description.

That was the case of *Caswell* v. *Davis*, 58 N. Y. 223, where the phrase used as a designation of the product was no more than an indication of the different articles combined in its production; and, as every person had the right to make the same combination, it was held to follow that it could be designated by the same descriptive phraseology. And it necessarily must therefore follow, if the article produced by the plaintiffs has been manufactured from ingredients principally included within the acquired meaning of this phrase, that the plaintiffs had no exclusive right to its use arising out of the manufacture of the article to which it has been applied by them in the course of their business. The principle of the case just cited has been supposed to be departed from in *Electro Silicon Co.* v. *Hazard*, 29 Hun, 369. But this position has not been sustained on account of the difference in the controlling facts of the latter case; for, while the phrase whose use was protected by the decision related in part to a substance which it described, it was still held, as it was not an article of merchandise, to be relieved from the operation of the rule maintained by this preceding authority. And the same remark may be applied to *Munro* v. *Beadle*, (Sup.) 8 N. Y. Supp. 414, and *Selchow* v. *Baker*, 93 N. Y. 59. Neither of these authorities have entrenched upon the principle maintained by the case first cited, but the rule as it was there stated is sanctioned in the decision which has been last referred to; for, as to names which are descriptive of the article itself, it was conceded "that when a manufacturer has given to his products a new name, invented by himself, for the purpose of distinguishing them as his, and the article becomes generally known to the trade and to the public by that name, the name becomes public property, and every one has a right to use it." Id. 66. The evidence in the present case goes even beyond the qualification to which this rule has been here subjected, for it tends to establish the fact that this phrase was employed to identify similar compounds long before the time when it was employed by the plaintiffs as a designation of their production. Without, therefore, determining that this action may not be maintained, it is sufficient to say that in this state of the proofs it would be improper to allow an injunction to be issued. Whether the plaintiffs shall maintain their right to it must depend upon the critical consideration of the evidence obtained from witnesses who can only be examined for this purpose when the trial of the action shall take place.

A further objection to the right of the plaintiffs to the injunction was placed upon the dissimilarity of the bottles used by the defendants to those in which the plaintiffs' compound was put up and sold, and in the labels placed upon the bottles. There was no resemblance in the shape of the bottles to those of the plaintiffs; neither was there any in the labels placed upon the bottles, further than the indication of the article by the same name of "Bromo Caffeine." And whether the public could be deceived into the purchase of the defendants' production for that of the plaintiffs has also been made a matter of very doubtful import by this evidence. This, like the other, cannot be settled favorably to the plaintiffs upon the affidavits, but must, if it is to be sustained at all, result from the evidence which shall be developed at the trial. For both reasons the order was right in refusing an injunction, and it should be affirmed, with $10 costs and the disbursements. All concur.